# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NESTOR PAUL HERNANDEZ-MORALES,<br><br>Petitioner,<br><br>v.<br><br>PAMELA BONDI, et al.,<br><br>Respondents. | Case No.:  25-cv-2629-BJC-MMP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION FOR INJUNCTIVE RELIEF AS MOOT**<br><br>**[ECF Nos. 1,2]** |

## BACKGROUND

In an order filed May 24, 2004, an immigration judge ordered Petitioner Nestor Paul Hernandez-Morales be deported and removed to El Salvador upon denying his request for political asylum, withholding of deportation, Convention Against Torture relief, and his request for adjustment of status.  EOIR Order, ECF No. 8-2 at 12.[1]  The Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal on October 19, 2005, and the Ninth Circuit denied his petition for review on August 1, 2012.  ECF No. 8-3; ECF No. 8-4.  No action was taken to remove or detain Petitioner following the Ninth Circuit's

---

[1] Page numbers refer to those generated by the Court's CM/ECF system.

decision.  Petitioner has lived in the United States for over twenty years, and he is the beneficiary of an I-130 immigrant-visa petition filed by his United States citizen spouse.  Pet. ¶¶ 1, 25, 27; ECF No. 2-3 at 16-17, 37.  DHS issued employment authorization to Petitioner, and he lived openly in the community.  ECF No. 2-3 at 41; ECF No. 11 at 5.

Petitioner was arrested on May 14, 2025, and placed in U.S. Immigration and Customs Enforcement ("ICE") custody at the Otay Mesa Detention Center on May 28, 2025, where he remains.[2]  *Id*. ¶¶ 1; ECF No. 8-5.  On June 20, 2025, Petitioner filed a motion to reopen before the BIA, which included claims for asylum, withholding of removal and protection under the Convention Against Torture.  ECF No. 6 ¶ 26.  He filed a supplemental motion with the BIA on July 7, 2025.  *Id*.

An immigration judge held a custody redetermination hearing on August 18, 2025, rejected the Department of Homeland Security's ("DHS") argument that Petitioner was subject to mandatory detention under 8 U.S.C. §1225(b)(2)(A), and set bond at $1,500 upon determining Petitioner posed no danger, and there is a minimal risk of flight.  *Id*. ¶¶ 4, 28; ECF No. 2-3 at 7, 8-10; ECF No. 8-6.  The bond was automatically stayed following DHS's appeal of the immigration judge's bond decision.  *Id*. ¶¶ 6, 29; ECF No. 8-7.

On September 26, 2025, Petitioner filed the instant Petition for a Writ of Habeas Corpus and a motion for temporary restraining order.  ECF No. 1.  Upon finding the opposing party should be afforded an opportunity to respond, the Court denied the temporary restraining order.  ECF No. 3 at 2.  The Court set a briefing schedule and a hearing on the petition and the request for injunctive relief.  *Id*. at 3.  On September 30, 2025, DHS filed a motion to remand with the BIA.  ECF No. 8-7 at 2-3.  Petitioner filed the operative amended petition on October 9, 2025.  ECF No. 6.  Respondents filed a return to the petition on October 14, 2025.  ECF No. 8.  Petitioner filed a reply on October 20,

---

[2] Petitioner lists two different dates for his detention: May 14, 2025 and June 25, 2025.  ECF No. 6 ¶¶ 1, 25.  Records indicate he was pulled over to the shoulder of I-15 by ICE agents and taken into custody on May 14, 2025, and placed in ICE Custody on May 28, 2025.  ECF No.  8-5 at 2-6.

25-cv-2629-BJC-MMP

2025.  ECF No. 11.

The parties appeared for a hearing before this Court on October 24, 2025.  On November 4, 2025, Respondents filed a surreply as directed by the Court, and Petitioner filed a response to the surreply upon leave of Court.  ECF Nos. 15, 16.  On November 25, 2025, Petitioner filed a document entitled "Notice of Status Change/Supplemental Authority."  ECF No. 18.  On December 6, 2025, Petitioner filed a "Second Notice of Related Case Status Change/Supplemental Authority.  ECF No. 19.

## LEGAL STANDARD

Courts may grant habeas corpus relief to those "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241; *see also Hamdi v. Rumsfeld,* 542 U.S. 507, 525, 124 S. Ct. 2633, 2644, 159 L. Ed. 2d 578 (2004) ("[T]he writ of habeas corpus remains available to every individual detained within the United States.").  Courts are authorized to grant writs pursuant to § 2241 to noncitizens in custody in violation of the Constitution or laws or treaties of the United States.  *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999).

## DISCUSSION

Petitioner seeks an order declaring 8 U.S.C. § 1226(a) governs his custody, not 8 U.S.C. § 1225(b)(2); enjoining Respondents from enforcing any policy or practice that denies immigration judges jurisdiction to conduct bond hearings under § 1226(a) for noncitizens who entered without inspection but are placed in removal proceedings; set[ting] aside Respondents' detention policy, as applied to Petitioner; and issuing a writ of habeas corpus directing Respondents to release Petitioner under the terms provided for in the immigration judge's order or, in the alternative, to provide an immediate bond hearing.  ECF No. 6 at 15-16.  In his request for injunctive relief, Petitioner requests an order requiring his immediate release in accordance with the immigration judge's order from August 18, 2025.  ECF No. 2-1 at 25.  He also requests an order enjoining Respondents from applying 8 U.S.C. § 1225(b)(2) or 8 C.F.R. § 1003.19(i)(2) to deny his release and enjoin Respondents from transferring him outside the Southern District of

California during the pendency of this action. *Id*. at 25-26.

In response, Respondents argue the Court lacks jurisdiction over the petition. ECF No. 8 at 4. Even if the Court assumes jurisdiction, Respondents argue Petitioner is lawfully detained.[3] *Id*. at 5-8.

**I. Jurisdiction**

Congress explicitly divested courts of jurisdiction over claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The provision is read narrowly and does not apply to every decision or action that may be a part of the deportation process, only those involving the Attorney General's decision to commence proceedings, adjudicate cases, or execute removal orders. *Ibarra-Perez v. United States,* No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (citing *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999)). It is a "discretion-protecting provision" and does not divest courts of jurisdiction to hear legal challenges that do not implicate the Attorney General's discretionary authority. *Id*. (citing *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004)). Challenges to unconstitutional practices and policies that do not arise from the Attorney General's decision to commence proceedings, adjudicate cases or execute removal orders. but are merely collateral to those, are not subject to section 1252(g). *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991)).

Respondents argue Petitioner's claim is barred by § 1252(g) because it arises from prosecutorial discretion. ECF No. 6 at 4. They contend the petition stems from the decision to execute his final order of removal. *Id*. In reply, Petitioner argues he challenges DHS's

---

[3] Respondents also argue Petitioner has not exhausted his administrative remedies because, at the time the petition was filed, an appeal and motion to remand was pending before the BIA. However, during the pendency of these proceedings, the BIA resolved DHS's appeal and motion for remand. *See* ECF No. 19. The appeal did not address, and could not address, the constitutional issues before this Court. *See In Re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997) ("It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer.").

mandatory detention notwithstanding the immigration judge's bond order, and DHS's shift to § 1231 without the regulatory notice-and-interview required by 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3), which fall outside § 1252(g). ECF No. 11 at 6. Petitioner argues his challenge to Respondents' mandatory detention policy as unlawful is distinct from any challenge to the timing of removal. *Id*. at 7.

Petitioner challenges the legality of his detention as unconstitutional and in conflict with federal law. Challenges to detention without bond is generally collateral to, and does not arise from, the decision to commence and adjudicate proceedings. See *D.D. v. LaRose*, No. 25-CV-2681-BJC-JLB (S.D. Cal. Oct. 22, 2025). Petitioner's challenge to his continued detention following the immigration judge's bond determination and Respondents' alleged failure to comply with statutory process and due process is merely collateral to, but does not arise from, the decision to commence and adjudicate proceedings. Accordingly, § 1252(g) does not deprive this Court of jurisdiction to hear Petitioner's claims.

**II. Merits**

Petitioner argues he is likely to succeed on the merits of this petition because the text, structure, and history of the INA demonstrate § 1226(a) governs his detention as someone who was arrested in the interior and placed in removal proceedings. ECF 2-1 at 11-12; *see also* ECF No. 6 ¶¶ 33, 36, 41. He maintains Congress confirmed the scope of § 1226(a) when it carved out narrow criminal categories by enacting § 1226(c) and reaffirmed that long-time residents, like Petitioner, remain entitled to individualized custody determinations by leaving such individuals under § 1226(a). ECF No. 2-1 at 12-13. He also contends nothing in the legislative history suggests that Congress sought to sweep all individuals present in the United States after an unlawful entry into mandatory detention whenever arrested. *Id*. at 15. Petitioner also argues the record and longstanding agency practice reflect that § 1226 governs Petitioner's detention. *Id*. at 17. He maintains DHS and EOIR have, for decades, consistently applied § 1226(a) to long-settled residents apprehended in the interior after entering without inspection, and his custody record

reflects this framework. *Id*.; ECF No. 6 ¶ 41. He also argues due process requires that the individualized determination by the immigration judge be honored, and his continued detention violates due process. ECF No. 6 ¶¶ 49, 54.

Respondents argue Petitioner is lawfully detained under § 1231(a) because he is subject to a final, executable order of removal. ECF No. 8 at 7, 8. They maintain ICE has been diligently pursuing removal efforts, but they were halted by this Court's order enjoining them from removing Petitioner in a previously filed action. *Id*. at 8. Respondents maintain Petitioner's removal is reasonably foreseeable and contend delays to Petitioner's removal is the fault of Petitioner. *Id*.

In reply, Petitioner argues Respondents' "post-filing pivot" to § 1231(a) cannot cure the unlawfulness of his detention. ECF No. 11 at 14. He maintains Respondents have not complied with the pre-detention or post-detention requirements of § 1231. *Id*. at 15. Specifically, he maintains DHS did not provide the required written notice or conduct the required individual interview at the time it now claims § 1231 detention authority attaches. *Id*. He argues DHS may not retroactively cure an unlawful detention by shifting statutory bases post-filing. *Id*. at 16. He argues Respondents' conduct undermines meaningful judicial review, deprives the courts of a stable basis for evaluating custody legality, and cannot satisfy the requirements of § 1231 or the Constitution. *Id*. at 17.

Petitioner maintains he has made a sufficient showing that removal is not imminent. *Id*. Therefore, he argues Respondents must rebut the showing with evidence of imminent removal and procedural compliance. *Id*. He contends Respondents have not provided travel arrangements, repatriation documentation, interview records, or custody determinations, but they merely voice a desire to remove Petitioner without satisfying the required legal prerequisites. *Id*. at 14. Petitioner argues DHS's failure to effectuate detention under § 1231 at the time of the 2012 removal order "underscores that DHS cannot invoke § 1231 as if detention had followed the removal order in 2012[.]" *Id*. at 18. Instead, he argues DHS must satisfy the regulatory prerequisites anew, and DHS failed to do so. *Id*.

25-cv-2629-BJC-MMP

## A. Detention Under § 1231

Respondents do not address Petitioner's arguments regarding his detention under § 1226. Instead, they argue Petitioner is properly detained under § 1231. The process available to Petitioner is affected by the statutory basis for his detention. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Therefore, the Court must determine the statutory basis for Petitioner's detention.

At the time of his detention on May 14, 2025, Petitioner was subject to a final order of removal because the Ninth Circuit Court of Appeals issued its mandate denying his petition for review. Pursuant to § 1231, non-citizens subject to a final order of removal must be detained during the removal period. 8 U.S.C. § 1231(a)(1)(A). The removal period is the ninety days within which the Attorney General must remove an individual ordered removed. *Id*. The removal period begins on the latest of the following dates: "(i) [t]he date the order of removal becomes administratively final; (ii) [i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; (iii) [i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B). Petitioner's removal period began on August 1, 2012, the date the Ninth Circuit Court of Appeals filed the mandate.

On November 25, 2025, Petitioner filed a document entitled "Notice of Status Change/Supplemental Authority" in which he explains he filed a petition for review with the Ninth Circuit on November 24, 2025, following the BIA's November 18, 2025 decision denying his motion to reopen. ECF No. 18. The Ninth Circuit issued a stay of removal pending the decision on the petition for review. *Id*. He argues his detention is governed by § 1226 as a result of the appeal and the stay of removal. *Id*. Petitioner's second notice, filed on December 6, 2025, includes a status of the proceedings before the Ninth Circuit

25-cv-2629-BJC-MMP

and the BIA.[4]  ECF No. 19.  Specifically, he notifies the Court that the Ninth Circuit issued a final order on his motion for a stay of removal pending disposition of his appeal.  *Id.*

A stay of removal in an appeal that does not entail judicial review of a removal order does not adjust the removal period.  *See* Diouf *v. Mukasey*. 542 F.3d 1222, 1230 (9th Cir. 2008) (Finding the plain text of § 1231 required the appeal entail a judicial review of the removal order.).  Petitioner's appeal before the Ninth Circuit of the BIA's denial of his motion to reopen is not a challenge to the removal order and, therefore, does not trigger § 1231(a)(1)(B)(ii) to adjust the finality of his removal order.  *See Id*.  *Prieto-Romero*, 534 F.3d at 1057("We must [ ] decide what statutory authority governs an alien's detention at this stage of his legal challenge to his removal."); *see also* 8 U.S.C. § 1231(a); *Avilez v. Garland*, 69 F.4th 525, 530 (9th Cir. 2023).

Petitioner's removal period ended on or about November 1, 2012, when the ninety days permitted by the statute concluded.  As of today, Petitioner has been detained more than the six months, the presumptively reasonable period recognized by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  If Petitioner demonstrates "there is no significant likelihood of removal in the reasonably foreseeable future," Respondents must rebut that showing for the detention to remain reasonable.  *Id*.  Petitioner suggests his current detention sufficiently demonstrates that removal is not imminent.  However, the record demonstrates ICE is ready to remove Petitioner as soon as judicial review is complete.  As noted by Respondents, Petitioner was previously transferred to a facility in Louisiana to board a flight to El Salvador but was prevented from doing so by a judicial stay.  ECF No. 8 at 7.  Accordingly, Petitioner fails to meet his burden.

**B.  Custody Review Procedures**

Alternatively, Petitioner argues DHS's failure to comply with mandatory custody

---

[4] Petitioner also includes a notice that a district court in the Central District of California recently certified a class action after determining DHS's policy of treating noncitizens arrested in the interior as "applicants for admission under 8 U.S.C. § 1225(b)(2)(A).

25-cv-2629-BJC-MMP

review procedures of 8 C.F.R. § 241.4 renders his detention unlawful. Specifically, he argues he did not receive notice, an interview or an individualized custody determination prior to his detention. ECF No. 11 at 18, 20, 21.

Respondents argue §§ 241.4(l) and 241.13(i) do not apply to this case because they concern a revocation of release following a post-final order detention, and Petitioner was not detained following his final order of removal until recently. ECF No. 15 at 2-3. Similarly, they contend the regulations do not apply because Petitioner's release on bond in 2003 was not predicated on an order of supervision or other post-final order conditions. *Id*. at 3. Respondents maintain Petitioner was released on bond in 2003, while his removal proceedings were pending, and when his removal order became final, the government did not deem his case an enforcement priority and exercised its discretion not to detain him or to execute his removal order. *Id*. As such, they argue there is no release from post-final order detention or order of supervision to revoke under the regulations. *Id*. They further argue § 241.13 does not apply because it is only triggered where the government determines that there is no significant likelihood of removal in the foreseeable future, and no such determination was made here. *Id*.

In his response to the surreply, Petitioner contends he was permitted to remain in the United States for over a decade under discretionary release and remained subject to DHS's authority. ECF No. 16-1 at 3. He asserts his release could have been terminated through written notice and interview under § 241.4. *Id*.

**1. Applicability of § 241.4**

Respondents maintain the custody review procedures of § 241.4 do not apply to Petitioner because his release occurred before his removal order was final, and § 241.4 only applies to those detained and released after a final order of removal. Although the record is not clear on exactly when Petitioner was detained and for how long, the parties agree

Petitioner was detained and released prior to the final order of removal in this matter.[5]

Statutory interpretation "begins with the plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118, (2009); *Minnick v. Comm'r*, 796 F.3d 1156, 1159 (9th Cir. 2015) ("Regulations are interpreted according to the same rules as statutes, applying traditional rules of construction."). The text of § 241.4 refers to "[t]he authority to continue an alien in custody" and limits its scope to custody determinations of noncitizens ordered removed. *See* 8 C.F.R. § 241.4(a). It does not explicitly state it applies to those detained and released after the removal period. However, it is entitled "Continued detention of inadmissible, criminal and other aliens beyond the removal period." *Id*. The language of § 241.4 assumes all noncitizens ordered removed are detained during the removal period. *See Jimenez v. Cronen*, 317 F. Supp.3d 626, 651 (D. Mass. 2018). The language of the regulation is ambiguous as to those noncitizens, like Petitioner, not detained during the removal period.

When a regulation is ambiguous, courts defer to the agency's interpretation "unless an alternative reading is compelled by the plain language of the regulation or by other indications of the agency's intent at the time it promulgated the regulation." *Foothill Presbyterian Hosp. v. Shalala*, 152 F.3d 1132, 1134 (9th Cir. 1998). When it published § 241.4 in the Federal Register, the Immigration and Naturalization Service explained the custody review procedure applied to "all post-order custody reviews inclusive of aliens who are the subjects of a final order of removal, deportation, or exclusion, with the exception of inadmissible Mariel Cubans. . ." Detention of Aliens Ordered Removed, 65 Fed. Reg. at 80291. Therefore, the regulation applies to *all* noncitizens subject to a final order of removal, like Petitioner, regardless of when the final order of removal was issued.

---

[5] Petitioner attests he was "briefly detained. . .and released without being placed into immigration proceedings" in December 2002. ECF No. 2-3 at 16, ¶ 1. His wife states Petitioner was detained for six months in December 2002. ECF No. 2-3 at 21. On January 16, 2003, Petitioner was served with a Notice to Appear informing Petitioner he was subject to removal for being present in the United States "without being admitted or paroled" or having arrived at a time or place "other than as designated by the Attorney General." ECF No. 8-1 at 2.

**2. Compliance with § 241.4**

A federal agency must follow its own regulations and procedures. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974). As discussed above, the revocation of release of noncitizens subject to a final removal order are governed by § 241.4. Upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); *see also Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *4 (S.D. Cal. Oct. 10, 2025) (Listing cases that held "§ 241.4(l)(1)'s procedural requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2).").

Respondents contend Deportation Officer Castaneda told Petitioner the reason for his arrest and that Petitioner was provided a Form I-294, Warning to Alien Ordered Removed or Deported. ECF No. 15 at 4. Respondents rely on Officer Castaneda's statement in the Record of Deportable/Inadmissible Alien, Form I-877, completed on May 28, 2025. In his statement, Officer Castaneda explains he arrived at Metropolitan Correctional Center on May 28, 2025, and told Petitioner he was "under arrest due to having a final order of removal." ECF No. 8-5 at 6. The Form I-877 indicated Petitioner was previously deported, excluded, or removed from the United States and he unlawfully reentered. ECF No. 15-1 at 3. However, this explanation was incomplete in that it ignored the fact that Petitioner was detained in December 2002, placed in immigration proceedings in January 2003 and *released* prior to the completion of the removal proceedings. ECF No. 2-3 at 14, 21. There is nothing in the record demonstrating Respondents took any steps to remove Petitioner after 2012 when the removal order was final. In fact, Respondents indicate Petitioner remained on discretionary release because his removal was not "an enforcement priority." ECF No. 15 at 3. As such, Petitioner was present in the United States under a discretionary release for many years and had not unlawfully reentered the United States after the removal order was final in 2012. In addition, the notice failed to

11

even mention discretionary release or provide the reasons for revocation of Petitioner's release as required.  Accordingly, the notice was inadequate.  *See Xayakesone v. Noem*, No. 25-CV-2995-JES-BJW, 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19, 2025) (Finding notice which included a statement that re-detention decision was based upon a review of the petitioner's file and a finding of changed circumstances was insufficient.); *McSweeney v. Warden of Otay Mesa Det. Facility*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025) (Finding a notice informing the petitioner "ICE has determined that you can be expeditiously removed from the United States pursuant to an outstanding order of removal against you. . ..the Board of Immigration Appeals dismissed your case appeal, and you are subject to an administrative final order of removal" did not provide adequate notice.); *Truong v. Noem*, No. 25-CV-2597-JES-MMP, 2025 WL 2988357, at *4 (S.D. Cal. Oct. 22, 2025) (Determining a notice that did not include what criteria under § 241.4(l)(2) ICE used to revoke the petitioner's release lacked the requisite specificity to support re-detention.).

Even assuming this notice meets the requirements of § 241.4, Petitioner was not provided this notice "upon revocation" as required.  Petitioner was originally arrested on May 14, 2025, and the arresting officer told Petitioner that he was "under arrest for being present in the United States illegally."  ECF No. 8-5 at 3-5.  However, the Form I-294 and Form I-877, Warning to Alien Ordered Removed or Deported was not provided to Petitioner until May 28, 2025.  There is no indication Petitioner was provided written notice "upon revocation," and the arresting officer's statement provides no explanation of the reasons for the revocation of his release.  Therefore, the notice fails to meet the requirements of § 241.4.

The Court also finds Respondents failed to provide a prompt interview as required.  8 C.F.R. §§ 241.4(l)(1).  This requirement affords noncitizens "an opportunity to respond to the reasons for revocation stated in the notification."  *Id*.  The record indicates Officer Castaneda attempted to speak to Petitioner on May 28, 2025, to discuss Petitioner's previous deportation, exclusion, or removal from the United States and unlawful reentry,

and he offered Petitioner the "opportunity to present information" to Officer Castaneda to make a decision on whether to reinstate the prior order of deportation, exclusion, or removal." ECF No. 15-1 at 3. Officer Castenda was under the mistaken belief Petitioner was removed after the order of removal became final and had unlawfully reentered when, in fact, Petitioner was under a discretionary release. *See* ECF No, 15-1 at 3. Therefore, the interview did not provide Petitioner the opportunity to respond to reasons for his revocation as required by § 241.4.

Respondents argue, even assuming this evidence of notice and interview under the regulations fall short, Petitioner has not established prejudice nor a constitutional violation. Respondents further argue Petitioner does not have a protected liberty interest in remaining free from detention where ICE has exercised its discretion under a valid removal order. The Court finds Respondents' argument unpersuasive. A showing of prejudice is not mandated by the Ninth Circuit when the violated regulation safeguards fundamental due process rights. *See Phan v. Noem*, No. 3:25-CV-02422-RBM-MSB, 2025 WL 2898977 (S.D. Cal. Oct. 10, 2025) (holding that "ICE's failure to comply with both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 violated Petitioner's due process rights."). Regulations such as 8 C.F.R. §§ 241.4(l), which provide notice and an opportunity to be heard before indefinite detention, plainly fall within this category. These procedural guarantees serve as the minimal process due before depriving a person of liberty.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds Petitioner's detention violates his due process rights. Accordingly, IT IS HEREBY ORDERED:

1.    The petition for a writ of habeas corpus is GRANTED IN PART AND DENIED IN PART.

2.    Respondents are ORDERED to release Petitioner from the Otay Mesa Detention Center under the terms provided by the Immigration Judge on August 18, 2025, following Petitioner's posting of the ordered bond.

3.    Respondents are enjoined from ENJOINED from re-detaining Petitioner

13

unless and until they follow the procedural safeguards set forth in 8 C.F.R. § 241.4.

4.    The petition is DENIED as to the remaining requests for injunctive relief and the request for declaratory relief.

4.    Petitioner's motion for injunction relief is DENIED as moot.

**IT IS SO ORDERED**.

Dated:  December 12, 2025

_____

Honorable Benjamin J. Cheeks
United States District Judge